WILLIAM JACKSON, Respondent, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

St. Louis Court of Appeals, May 6, 1913.

1. TELEGRAPHS AND TELEPHONES: Error in Transmitting Message: Negligence. Proof of error in transmitting a telegram makes out a prima facie case of negligence on the part of the telegraph company.

2. ———: ———: Right of Recovery: Facts Stated. Plaintiff's agent wired plaintiff, on February 28, 1909, that wool could not be purchased for less than twenty-one and one-half to twenty-two cents per pound. Plaintiff, on March 1, wired, in response to this message, that the agent should not pay to exceed twenty-one cents per pound. This message was erroneously transmitted so as to authorize the payment of twenty-two cents per pound, and the agent bought a quantity of wool at this figure on March 2. In an action against the telegraph company, *held* that the agent's telegram concerning the price at which wool could be bought on February 28 was not con-

clusive as to what the market value was on March 2; *held*, *further*, that the agent was justified in buying wool at twenty-two cents per pound, upon the receipt of the erroneously transmitted telegram, although, by continuing negotiations with the sellers, he might have bought at a lower figure; and hence it is *held*, that defendant is liable for the difference between the amount paid by the agent for the wool bought and the market value thereof on the day and at the place of the purchase.

3. ———: ———: Measure of Damages: Evidence. In an action for damages caused by erroneously transmitting a telegram authorizing plaintiff's agent to pay twenty-two, instead of twenty-one, cents a pound for wool, evidence was admissible as to the market value of wool at the place of purchase on the day the telegram was sent; the measure of damages being the difference between the market value of the wool at the time and place of the purchase and the higher price paid by plaintiff's agent because of the error in transmission.

4. ———: ———: Damages: Market Value: Sufficiency of Evidence. In an action for damages caused by erroneously transmitting a telegram authorizing plaintiff's agent to pay twenty-two, instead of twenty-one, cents a pound for wool, evidence that actual sales were made at the place in question at twenty-one cents per pound two days later than the day on which plaintiff's agent purchased at twenty-two cents, and at slightly less than that three days later, and at twenty cents two or three days before, was sufficient to establish the market value at the time and place in question.

5. INSTRUCTIONS: Defects and Omissions: Cure by Other Instructions. An instruction, in an action for damages caused by the erroneous transmission of a telegram authorizing the purchase of wool for plaintiff at twenty-two, instead of twenty-one, cents a pound, that the jury should find for plaintiff if they believed that an error was made in transmitting the telegram, in that, as delivered, it read twenty-two cents instead of twenty-one cents, was not reversible error for not including all of the elements essential to recovery, in view of the defenses, where the defendant's theory was fully covered by instructions given on its behalf, since, in determining the correctness of an instruction, the whole charge should be considered.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

AFFIRMED.

*Ferriss, Zumbalen & Ferriss* for appellant.

(1)   Evidence of what might, should or could have taken place under conditions which never existed is too uncertain and speculative to constitute the basis of a finding of damages.  Rimel v. Hays, 83 Mo. 200; Rutledge v. Railroad, 110 Mo. 312; Reynolds v. Telegraph Co., 81 Mo. App. 223; Baldwin v. Telegraph Co., 45 N. Y. 744; Hosiery Mills v. Tel. Co., 123 Ga. 216; Lumber Co. v. Telegraph Co., 52 W. Va. 410; Tanning Ext. Co. v. Railroad, 143 N. C. 376; Smith v. Tel. Co., 83 Ky. 104; Hughes v. Tel. Co., 114 N. C. 70; Telegraph Co. v. Watson, 92 Ga. 202.   The needed certainty cannot be supplied by testimony as to "market value" where as here, the facts show that there was not and could not be any "market value," within the accepted meaning of that phrase.   19 Am. & Eng. Ency. 1153.   (2)   It is an agent's duty to exercise the utmost good faith and fidelity in dealing with his principal; to obey the latter's instructions, to advise him of facts relevant to the matters in hand, to display reasonable care and diligence as well as ordinary intelligence in handling his business.   31 Cyc. 1456; 1 Am. & Eng. Ency. 1063, 1069, 1071; Holmes v. Cathcart, 60 L. R. A. 734.   Where defendant's fault or negligence is the remote cause and plaintiff's or his agent's or a third party's subsequent fault or negligence or some efficient intervening act is the direct and proximate cause of plaintiff's loss, the defendant is not liable.   37 Cyc. 1757; Logan v. Railroad, 96 Mo. App. 465; Reynolds v. Telegraph Co., 81 Mo. App. 223; Commission Co. v. Telegraph Co., 101 Mo. App. 500; Tel. Co. v. Briscoe, 18 Ind. App. 22; Higdon v. Tel. Co., 132 N. C. 726; Lowery v. Tel. Co., 60 N. Y. 198; Tel. Co. v. Cornwell, 2 Colo. App. 491.   (3) An instruction which assumes to direct a verdict for plaintiff must include all the elements in the case essential to his right of recovery.   Error in plaintiff's instructions

is not cured by correct instructions given for defendant, where the two sets are inconsistent. Sheperd v. Transit Co., 189 Mo. 362; Brokerage Co. v. Gates, 190 Mo. 391; State v. Helton, 234 Mo. 559; Hamilton v. Railroad, 114 Mo. App. 504; Smith v. Railroad, 126 Mo. App. 120; Haynor v. Water Co., 129 Mo. App. 691; Ross v. Railroad, 132 Mo. App. 473; Russell v. Poor, 133 Mo. App. 723; Kelly v. United Ry. Co., 153 Mo. App. 114.

*Nagel & Kirby* and *E. G. Curtis* for respondent.

(1) Proof of a mistake in a telegram makes a prima facie case of negligence on the part of the telegraph company, and in the absence of any proof to the contrary, the only question then open is that of the measure of damages. Reed v. Telegraph Co., 135 Mo. 661; Hughes v. Telegraph Co., 79 Mo. App. 133. (2) Market value may be established by proof of sales of the same character of property at or about the time of the sale in question and also by expert testimony. Reilly v. Cullen, 101 Mo. App. 32; Johnson-Brinkman Com. Co. v. Wabash, 64 Mo. App. 590; Cliquot v. U. S., 3 Wall. 114; Theiss v. Weiss, 166 Pa. St. 9; Douglas v. Merceles, 25 N. J. Eq. 144; Parmentier v. Fitzpatrick, 135 N. Y. 190. (3) A single instruction need not cover the whole case, but all the instructions should be read together and even an omission in plaintiff's instructions may be cured by defendant's. Lange v. Railroad, 208 Mo. 458; Anderson v. Union Terminal Railway, 161 Mo. 411; Meadows v. Life Ins. Co., 129 Mo. 76; Hughes v. Railroad, 127 Mo. 447; Owens v. Railway, 95 Mo. 169; McCloskey v. United Railways, 162 Mo. App. 232; Hales v. Raines, 146 Mo. App. 232; Reding v. Reding, 143 Mo. App. 659; Shores v. City, 134 Mo. App. 9; Shanahan v. Transit Co., 109 Mo. App. 228.

ALLEN, J.—This is an action for damages alleged to have been suffered by plaintiff by reason of the negligent transmission by defendant of a telegram from St. Louis, Missouri, to Wibaux, Montana. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff is a dealer in wool in the city of St. Louis, and one C. M. Dinsdale, of Wibaux Montana, was his agent for the purchase of wool, i. e., to contract in advance with wool growers for their crops of wool to be clipped and delivered later. On or about February 28, 1909, plaintiff received from his said agent, at Wibaux, a telegram as follows:

"Twenty cents has been offered and refused. Nothing less than twenty-one and a half to twenty-two cents would buy the best clips. Answer.

"C. M. DINSDALE."

In reply to this message plaintiff on March 1, 1909, wrote, and delivered to the defendant, the following telegram for transmission to the agent at Wibaux, viz.:

"Telegram received, prices quoted out of all reason provided you can buy absolutely the choicest clips with tags allowance with guarantee free of spear grass inserted on contract you may pay twenty-one be conservative only choicest clips wanted absolutely.

"WILLIAM JACKSON."

This telegram as actually transmitted, and delivered to the agent at Wibaux, March 2, 1909, was as follows:

"Telegram rec'd prices quoted out of all reason provided you can buy absolutely the choicest clips with tag allowance and with guarantee free spear grass instruct on contract you may pay *twenty-two* be conservative only choicest clip wanted absolutely.

"WILLIAM JACKSON."

The evidence disclosed that, relying upon this telegram, plaintiff's agent at Wibaux, Montana, contracted for the purchase by plaintiff of four crops of

wool on said March 2, 1909, at twenty-two cents per pound. It appears that there was no regular exchange or board of trade at or near Wibaux, Montana, where quotations of the prices of wool were made, but that wool buyers were in the habit of meeting there about the time of the year that this transaction took place, for the purpose of negotiating with wool growers in that vicinity for the purchase of their wool; the custom being to purchase the entire crop of wool while the same was growing upon the backs of the sheep, for future delivery when ready to be clipped. There was evidence that market conditions in the East, and instructions from dealers there, largely govern the action of the wool buyers, who purchase as agents for such dealers.

There was testimony of so-called experts, familiar with the prices of wool at the time in question, that the market value of wool at Wibaux, Montana, on March 2, 1909, was from twenty to twenty-one cents per pound. Plaintiff's testimony showed that sales of wool of the character here in question were made on March 4, 1909, at twenty-one cents per pound, and on March 5, 1909, at twenty and one-eighth cents per pound; and that two or three days prior to March 2d, wool was sold at twenty cents per pound. From the evidence, there appears to be no standard by which to arrive at the market value of wool, at the time and place, other than by the prices at which sales were there made at or about this time. It appears that the buyers negotiated or dickered with the owners, and the price paid for any crop depended upon the bargain made; some owners accepting one price, and others holding out for a time for a higher figure.

The evidence showed that plaintiff did not suffer an actual loss on the lot of wool purchased at twenty-two cents per pound; that is to say, plaintiff sold the wool at some profit. The suit proceeds upon the theory that plaintiff is entitled to recover the additional

profit of one cent per pound which he would have made had the wool been purchased at twenty-one cents per pound instead of twenty-two cents.

The defendant offered no evidence. The jury returned a verdict for plaintiff for $966; for, although plaintiff's evidence went to show that, in reliance upon the telegram, 97,762 pounds of wool had been purchased by the agent at twenty-two cents per pound, plaintiff nevertheless in his petition prayed judgment for only $966.

The only assignments of error requiring consideration pertain to the overruling of a peremptory instruction offered by defendant, to the effect that plaintiff could recover only nominal damages, and the giving of instructions requested by plaintiff.

I.  It does not appear to be disputed that proof of defendant's error in transmitting the telegram makes out a prima facie case of negligence on its part.  [Reed v. Western Union Telegraph Co., 135 Mo. 661, 37 S. W. 904, and cases cited; Hughes v. Western Union Telegraph Co., 79 Mo. App. 133.]  And as defendant offered no explanation, the only question remaining open pertained to the measure of damages. Appellant insists that the instruction offered by it, to the effect that plaintiff could recover only nominal damages, should have been given.

As appellant's argument proceeds, plaintiff failed to make a case entitling him to anything more than nominal damages, for the reason, as is said, that plaintiff's case, with respect to actual damages suffered, rests purely upon conjecture and speculation. It is urged that if twenty-two cents per pound was the lowest price at which the wool could have been purchased, then plaintiff sustained no loss in the premises; for in that event, even had the message been correctly transmitted, the agent would not have been able to purchase any wool.  And appellant says that plaintiff cannot recover upon the theory that his agent

might have purchased at twenty-one cents but for the mistake in sending the telegram, for the reason that what the agent might have done is purely a matter of speculation; and furthermore that the agent's telegram to the plaintiff, above set out, shows that wool of the grade in question could be purchased only at twenty-one and one-half to twenty-two cents per pound.

And appellant insists that plaintiff cannot recover by showing that the market value of wool at the time and place in question was twenty-one cents per pound. This for the reason that there was no way, as appellant says, to definitely determine the market value; and for the further reason that proof that the market value was twenty-one cents per pound destroys plaintiff's claim for damages, for the reason that if this was the market value of the wool and the latter could have been purchased by plaintiff's agent at this figure, then there was no occasion for paying more, and it was the agent's own negligent act, in paying twenty-two cents, that was the proximate cause of plaintiff's loss, and not the error in transmitting the telegram.

We are not persuaded, however, that this argument advanced by learned counsel for appellant is sound. In the first place, the defendant stands chargeable with negligence to which plaintiff's loss may be fairly attributed, and we think it does not lie in the mouth of defendant to say, in effect, that plaintiff's agent should have known better than to rely upon the erroneous telegram. In whatever light the transaction may be viewed, there appears to be ample evidence to justify the submission to the jury of the question of plaintiff's right to recover substantial damages. It is perfectly clear that plaintiff did not intend to authorize his agent to purchase at a price higher that twenty-one cents per pound. It is true that the agent's telegram indicates that the wool could not be

purchased at a figure quite so low at the time that telegram was sent, but this is by no means conclusive as to what the market value was on or about March 2d, if the question before us is to depend upon the market value.

So far as concerns the action of plaintiff's agent in paying twenty-two cents a pound for the wool, pursuant to the authority given him by the spurious telegram, we must view this in the light of the attendant circumstances. The evidence disclosed that Dinsdale was an agent buying for plaintiff on commission. He was negotiating with wool growers for the purchase of their crops of wool, and he and the growers were dickering over the price to be paid. Naturally the growers were interested in getting the highest possible prices. The agent offered twenty cents per pound, which was refused. At this stage of the negotiations he sent to his principal the telegram quoted above. Upon receiving a reply authorizing him to pay twenty-two cents a pound, he was justified in closing the negotiations at any price not above that figure. It cannot be said that he should have waited and continued negotiations, even though he may thereby have been able to purchase at a lower figure. He was within the authority conferred upon him by the telegram, and the evidence does not disclose any ground upon which the defendant may rightfully question what he did in reliance thereupon.

We think it was proper to allow plaintiff to show what the market value of wool was at Wibaux, Montana, on or about the day in question. In fact as we view the case the measure of damages must depend upon the market value.

In McCarty et al. v. W. U. Tel. Co., 116 Mo. App. 441, 91 S. W. 976, the action was for negligence in transmitting a telegram concerning the sale of some mules. The plaintiffs had offered to sell the mules to one Pendleton for $135. The purchaser did not then

agree to take them, but that evening delivered to the defendant a telegram directed to the owners as follows: "Will give one thirty for mules." This message was transmitted and delivered as follows: "Will leave one thirty for mules." Plaintiffs, on receiving the telegram, inferred that the purchaser had decided to take the mules at $135 each, and delivered the mules to him. There was evidence that the market value of the mules at the time and place in question was $135 per head. As to the damages recoverable, this court, through BLAND, P. J., said:

"The plaintiff has a right to be placed in the same position he would have been in had defendant's agents correctly transmitted the telegram. Had this been done the mules would not have been delivered to Pendleton and the presumption is that plaintiffs would have been able to have sold the mules at what the evidence shows was their market value at Clarence, one hundred and thirty dollars per head. Their loss or damage therefore was five dollars on each mule."

In other words, plaintiffs were there the sellers, and were allowed to recover the difference between what was shown to be the market value of the thing sold and the lower price at which it was sold because of the spurious telegram. In the case before us, the plaintiff is the purchaser, having, on account of the erroneous telegram, paid a price higher than what the evidence shows to have been the market value. No good reason is perceived why his measure of damages should not be the difference between the market value of the thing purchased and the higher price paid because of the error in transmitting the telegram.

In Reed v. W. U. Tel. Co., supra, the action was for negligence in transmitting a telegram sent by plaintiff's agent to her in respect to the sale of certain real property. As written and delivered, the telegram advised plaintiff that an offer of $1300 had been made for the property. As transmitted and delivered,

the telegram read $1900. In reliance upon the telegram, plaintiff forwarded a deed, and the property was sold by her agent, and she sued to recover the damages sustained. There was evidence that the market value of the property was $1900. The court through GANTT, P. J., said:

"But it is urged that even if defendant is liable for negligence under the circumstances, still the loss of the difference between the price received and the actual market value of the lot is not the proximate result of that negligence, in other words is not the natural and reasonable consequence of defendant's mistake, and the principle is invoked that no one can recover damages which he can avoid by diligent effort upon his own part.

"Let us examine this view of the case . . . . In this way plaintiff was lead to believe she was offered $1900 for her property. Being willing to part with it for that sum she wired acceptance of the proposition made. The proposal was only $1300, but in this way she was made to accept that proposal. Her agent was clothed not only with apparent but actual authority to sell for $1300 so far as he was advised. Being thus empowered to sell, he made a binding contract and accepted a part of the purchase money. The deed was forwarded and he delivered it. All this was done upon reliance on the correctness of defendant's action. Could a more natural consequence ever follow a transaction than this loss did upon the mistake of defendant? Does it lie in defendant's mouth to speculate how plaintiff or her agent by the exercise of care which it failed to exercise might have avoided her contract with the purchaser?"

Here we think the presumption should be indulged that but for the erroneous telegram, plaintiff could have purchased the wool, at or about the time in question, for its market value. And the latter furnishes

the only basis by which to intelligently determine plaintiff's damages in the premises.

II.  The next question arising, then, is whether the evidence was sufficient to establish the market value of the thing sold at the time and place in question. It appeared from the evidence that actual sales were made at twenty-one cents two days later, and at slightly less than that figure three days later, and that two or three days before March 2d, wool sold as low as twenty cents per pound.  No other way appearing to determine the market value, we think it clear that this evidence is sufficient to take the question to the jury, and that, in the absence of other evidence pertaining thereto, a verdict may be based thereupon.  [See Permertier v. Fitzpatrick, 135 N. Y. 190; Cliquot v. U. S., 3 Wall. 114; Douglas v. Merceles, 25 N. J. Eq. 144; Reilly v. Cullen, 101 Mo. App. 32, 74 S. W. 370.]

III.  On behalf of plaintiff, the court instructed the jury that if they believed from the evidence that an error was made by defendant in transmitting and delivering plaintiff's telegram to his agent, in that said message as delivered read twenty-two cents instead of twenty-one cents, then their verdict should be for the plaintiff.  Then follows an instruction as to the measure of damages.  Appellant contends that it was error to give the above instruction, directing a verdict for plaintiff, in that it did not include all the elements in the case essential to plaintiff's right to recover, in view of the defenses relied upon.  As to this question, it is sufficient to say that defendant asked and the court gave instructions covering defendant's theory of the case fully.  The argument advanced is that, although this is true, nevertheless the giving of defendant's instructions does not cure the alleged error in the instruction given for plaintiff.  This con-

tention is unsound. The instruction for plaintiff above referred to authorized a recovery (of at least nominal damage) because of the error in transmitting the telegram. This, as we have seen, is correct; for defendant's error, unexplained as it was, made a prima facie case against it. And there was no reversible error in giving the instruction in the form in which it was given, since the very things which defendant claims should have been included in that instruction were placed before the jury in instructions given for defendant. The instructions must all be read together before condemning one for such an omission. [Meily v. Railroad, 215 Mo. l. c. 589, 114 S. W. 1013; Lange v. Railroad, 208 Mo. l. c. 477, 106 S. W. 660; Hughes v. Railroad, 127 Mo. l. c. 452, 30 S. W. 127; Meadows v. Life Ins. Co., 129 Mo. l. c. 97, 31 S. W. 578; Owens v. Railroad, 95 Mo. l. c. 181, 8 S. W. 350; Johnston v. Railroad, 150 Mo. App. l. c. 323, 130 S. W. 413; Wright v. Mining Co., 163 Mo. App. 536, 147 S. W. 213.]

For the reasons given above the judgment of the circuit court is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.